**Johnny Damon LEVI, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–90–178 CR.**

Court of Appeals of Texas, Beaumont.

May 15, 1991.

Richard Ellis Turkel, Orange, for appellant.

Steven Howard, Co. Atty., Donna O'Shea, Asst. Co. Atty., Orange, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a jury conviction for the first degree felony offense of Delivery of a Controlled Substance, namely cocaine. The indictment charging appellant with the offense included one enhancement paragraph. Appellant pleaded true to the enhancement allegation and was sentenced by the jury to thirty-seven (37) years confinement in the Institutional Division of the Texas Department of Criminal Justice, and fined $3,000.00. Appellant raises two points on appeal, to-wit:

### Point of Error Number One

The trial court erred by admitting into evidence the State's exhibits numbered 1, 2, 3, and 4 over the objection that there was no proper showing of chain of custody.

### Point of Error Number Two

Because State's exhibits 1, 2, 3, and 4 are inadmissible there is insufficient evidence on which to support a conviction.

In the interest of clarity, State's exhibit 1 was identified as a plastic bag which was submitted to the Jefferson County Crime Lab. State's exhibit 1 contained State's exhibits 2 and 3. State's exhibit 2 was identified as an evidence tag with "Case No. 89–12915" printed on it and stamped "No. 19347". Our reference to stamp No. 19347 will become significant later in the opinion. State's exhibit 3 was identified as a small brown envelope which contained the one "off white, rock like substance" that was later identified as cocaine. State's exhibit 4 was identified as a copy of the original laboratory submission form which was attached to State's exhibits 1, 2, and 3. We note from the testimony of the chemist, Lori Bates, that State's exhibit 3 contained the cocaine rock, that the evidence tag stamped No. 19347 was attached to State's exhibit 3, that State's exhibit 3 (the small brown envelope containing cocaine rock) and State's exhibit 2 (evidence tag stamped No. 19347) were placed inside State's exhibit 1 (the plastic bag) and that State's exhibit 4 (the laboratory submittal form) was physically attached to State's exhibit 1 but referenced the contents of State's exhibits 1 and 3.

The record further reflects that at some point during the trial the State attempted to introduce into evidence State's exhibits 1, 2, 3, and 4. Appellant's trial counsel responded as follows:

MR. LEBLANC [for appellant]: Your Honor, I've looked at those exhibits. I don't believe the State has proven a correct chain, so I'm going to object to the admission of those.

THE COURT: Objection is overruled. Exhibits 1, 2, 3, 4, 5, 7, and 8 are admitted.

MR. LEBLANC: Note our exception, your Honor.

Appellant cites to *Edlund v. State*, 677 S.W.2d 204, 210 (Tex.App.—Houston [1st Dist.] 1984, no pet.) for a rule that, "[A] showing of chain of custody is required where there are routine or generally unidentifiable or undistinguishable scientific tests or analysis". We make no comment as to the precedential value of this statement. We do note that appellant elaborates on his points of error by arguing inadmissibility because of two breaks in the chain of custody. Appellant's brief states:

The first break is between the arresting officer Deputy Kirkpatrick and Lynn Arceneaux, the agent who delivered the sample to the testing laboratory. The second break occurs when Mr. Arceneaux can not positively say what he did

with the sample after he got it from the arresting officer.

At this point, a rendition of the testimony pertinent to this appeal is in order. Deputy Mike Kirkpatrick of the Jefferson County Sheriff's Office was working undercover with the Orange Police Department's Drug Task Force Unit. Deputy Kirkpatrick testified that he purchased a "rocklike" object from a man later identified as appellant. Deputy Kirkpatrick testified that due to his experience, he believed the rocklike substance to be cocaine. The entire transaction was recorded by a microcassette recorder that Deputy Kirkpatrick had concealed inside the vehicle the Deputy was operating. Deputy Kirkpatrick then left the area in his vehicle and met up with Lynn Arceneaux, the supervisor for the Orange Drug Task Force Unit. Kirkpatrick and Arceneaux then went to the Orange Police Department at which time Kirkpatrick turned over to Arceneaux both the rock purchased from appellant and the microcassette of the transaction. Kirkpatrick testified that he personally observed Arceneaux place the cocaine rock inside State's exhibit 3 (the small brown envelope), place his own signature on State's exhibit 2 (the evidence tag stamped No. 19347), and witnessed Arceneaux also sign State's exhibit 2. Kirkpatrick then personally witnessed Arceneaux place State's exhibits 2 and 3 inside State's exhibit 1 (the plastic bag). Detective Arceneaux testified to the same procedure used to secure the rock purchased from appellant for submittal to the Crime Lab. Arceneaux additionally testified that he personally filled out the information on State's exhibit 4 (the laboratory submittal form). Arceneaux further testified that he personally recognized State's exhibits 2 and 3, and he personally submitted State's exhibits 1, 2, 3, and 4 to the Jefferson County Crime Lab. Lori Bates, the chemist with the Jefferson County Crime Lab testified that State's exhibit 1 was sealed when she received it and that she cut it open; that State's exhibits 1, 2, and 3 were submitted by Detective Arceneaux, as she personally accepted the exhibits from him, and she personally recorded on State's exhibit 4 (the laboratory submission form) how the exhibits were received and the date she received the exhibits. Ms. Bates further testified that she conducted tests on the substance contained inside State's exhibit 3 and that the substance was determined to be cocaine. Appellant points out in his brief that there appears to be a discrepancy in Detective Arceneaux's identification testimony with regard to the Orange Police Department case numbers written upon State's exhibit 2 (the evidence tag) and State's exhibit 4 (the laboratory submittal form). In examining those two pieces of evidence reproduced for us in the statement of facts, we note that the evidence tag bears the case number "89–12915," and the laboratory submittal form appears to bear the case number "89–1291*8*". We do note, however, that both case numbers appear to be handwritten, and that the final digit "8" on the laboratory submittal form could be an error as it appears that someone went over the digit with a pen attempting to darken it into the number "5". We see this as of no consequence as the evidence tag is also stamped by what appears to be a mechanical device with the number "19347," and handwritten on the description line of the laboratory submittal form are the words, "off white rock like substance (tag #19347)". This, along with the testimony of Deputy Kirkpatrick, Detective Arceneaux, and Ms. Bates is more than sufficient to overcome the apparent discrepancy in case numbers.

■ Appellant's complaint, evidence lacking a proper chain of custody, is further grounded on the argument that because Deputy Kirkpatrick testified that he made another purchase of cocaine on the same day that he made the purchase from appellant, proof that the two items purchased were kept separate and distinct was lacking and therefore made the rock contained in State's exhibit 3 inadmissible. This, and other such "chain of custody" complaints are ones upon which we are asked to rule fairly regularly. Thankfully, these complaints have finally begun to center around offenses dealing with controlled substances or blood samples and away

from cases dealing with items that are readily identifiable by witnesses such as clothing, tools, handguns, knives and the like. We see nothing supernatural in the admission of physical evidence such as controlled substances, blood, urine, hair, or any other piece of evidence taken from an accused or victim, subjected to scientific testing, and then presented to the fact-finder for their consideration in assessing guilt or innocence. Yet, in criminal cases, both prosecution and defense seem mesmerized by the magic words, "chain of custody". We feel that the key to overcoming this bit of evidentiary myopia is to understand and appreciate the difference between "admissibility" of a piece of evidence, and "weight" of a piece of evidence. In this regard, we look to two areas of the Rules of Criminal Evidence as well as authoritative case law.

TEX.R.CRIM.EVID. 401 defines "relevant evidence," and Rule 402 provides that *all* relevant evidence is admissible, except where the constitution or other statutory provisions state specific exceptions. It goes without saying that in a criminal prosecution for the offense of delivery of a controlled substance, the actual controlled substance itself would be a relevant piece of evidence. In fact, proof that the "item" delivered was indeed a controlled substance is an element of the offense and must be proven beyond a reasonable doubt. The actual, physical existence of the controlled substance, introduced into evidence to aid in the deliberation of the fact-finder, is immeasurable in providing credibility to the prosecutor's case. The other side of the "admissibility" coin deals with "identification" of a particular item as being what its proponent purports it to be. TEX.R.CRIM. EVID. 901 provides the following:

**(a) General Provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

**(b) Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) *Testimony of witness with knowledge.* Testimony that a matter is what it is claimed to be.

Thus, Rule 901 states that testimony from a witness shown to have knowledge of the events in question that particular items of evidence are what they purport to be satisfies the rule with regard to proper identification. Again, in a criminal trial for delivery of a controlled substance, while an actual item of controlled substance may be a relevant piece of evidence, the trial court must be satisfied, based on Rule 901, that the item tested and proved to be a controlled substance was properly identified as the same item delivered by the accused. This is normally done by a witness with knowledge of the transaction. Most often it is the undercover police person who made the purchase of the item. This entire concept is briefly but succinctly discussed in *United States v. White*, 569 F.2d 263, 266 (5th Cir.1978) *cert. denied*, 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 149 (1978). In *White*, the Court, also deciding a chain of custody issue in a drug case, stated:

The more typical chain of custody cases make clear that the mere possibility of a break in the chain does not render the physical evidence inadmissible, but raises the question of the *weight* to be accorded by the jury to the sufficiency of the proof of a chain of custody. (citations omitted). . . .

Here the alleged break is that government agents did not witness the deal's consummation. Moreover, there is nothing in the record indicating that marked bills supplied by the government were found in [defendant's] possession after the sale. (citations omitted) Nonetheless, [the informant/buyer's] testimony supplies the missing link in the chain, since he testified that he purchased the drugs from [defendant]. [The informant/buyer's] credibility on this point *is an issue for the jury*, as would also be the case had an undercover government agent, rather than an informant, made the buy.

672

Allowing the informant's testimony to supply the missing link is no different than allowing connection of physical evidence with a defendant to be shown by circumstantial evidence. (citations omitted)  In these cases proof of the connection *goes to the weight of the physical evidence rather than its admissibility.* (emphasis ours).

We feel that the Fifth Circuit's analysis of the question hits the nail squarely on the head.  The question of any discrepancy in the source or positive identity of the physical evidence is for the fact-finder to resolve.  We are also supported in this analysis by *Jones v. State*, 617 S.W.2d 704 (Tex. Crim.App.1981); and our own recent decision, *Earnest v. State*, 791 S.W.2d 654 (Tex.App.—Beaumont 1990, no pet.)  We find, in the instant case, that the testimony provided a sufficient chain of custody and, therefore, State's exhibits 1, 2, 3, and 4 were properly admitted.  Appellant's points of error 1 and 2 are overruled, and the judgment and sentence of the trial court are affirmed.

AFFIRMED.